Welcome to the United States Court of Appeals for the Fourth Circuit. We have three cases on our docket. Before we begin, I want to welcome and thank Judge Rossi Alston from the Eastern District of Virginia for joining us this morning. My pleasure, sir. Thank you. Our first case this morning is 22-2271, Sonda v. West Virginia Oil & Gas Conservation Commission. Mr. Ritchie. Good morning, Your Honors, and may it please the Court. My name is Zach Ritchie. I'm here on behalf of the appellants of the West Virginia Oil & Gas Conservation Commission and its members in their official capacities. I'd like to address three issues in argument today. First, this Court's jurisdiction. Second, the standing, or lack thereof, of the appellees, the plaintiffs below. And third, the merits of the Pullman abstention order. First, this Court can be satisfied of its appellate jurisdiction in this case from the Pullman abstention order below. First, under the effectively out-of-court doctrine, which the Supreme Court has recognized in a series of cases beginning with Idyllwyde and reaffirmed most recently in Quackenbush, this Court can exercise its appellate jurisdiction over the stay order under Pullman in this case because the district court has effectively surrendered its jurisdiction to state court and in so doing has decided an issue separate from the merits. And under those cases, this stay order would absolutely fall within that doctrine and this Court can exercise its jurisdiction under 1291. In addition, the Court could also, if it's not persuaded that the effectively out-of-court doctrine applies here, it could consider the Pullman stay order as a collateral order under that test. This order will satisfy each of those prongs. First, again, this is an issue separate from the merits, a disputed issue, and it's effectively unreviewable on appeal. Should this case proceed in state court to resolution, there is not going to be any way that this Pullman stay order could be reviewed later. Unless there are any questions on this Court's jurisdiction, I'd move to standing. So all of the Pullman cases and the related cases that I've seen involve a plaintiff who is attempting to get out from under a stay order, but you're the defendant and you're asking to do the same. It seems a bit odd. I mean, this whole case seems a bit odd. What do you have to say about that? I agree, Your Honor. It is a bit of an unusual posture. Two reasons, I think, that we're here. One, we don't believe that these plaintiffs have standing, and in West Virginia state courts also apply the same doctrine, standing doctrine as federal courts, and we would simply like the federal court to recognize that these particular plaintiffs don't have a dog in the fight, so to speak. But they don't seem to be in any particular hurry to continue to sue you, so I don't know what's – I understand, Your Honor, and from our standpoint, we don't believe they have filed in state court, but to preserve our appellate rights, we, of course, noticed the appeal within 30 days of the entry of the Pullman order. I think at this point, certainly, should we go back to the district court, we would certainly ask them to dissolve the stay and dismiss the case, but here we are. Secondly, I think in this case, the district court suggested, at least, that there was some unclear issue of state law sending it to state court, and we'd rather not the state courts be under some apprehension that there is an unclear issue of state law, and we don't believe that there is. But it is an unusual posture, I agree, Your Honor. Moving to the standing matter, here in this case, we don't believe that they've suffered any concrete injury, and certainly not, or certainly impending injury, from the commission's actions. Standing, as you know, is a jurisdictional issue, and we should usually address that, and the court did address that on the first time around, but there's an amended complaint, and there are numerous allegations with respect to standing, and the record starts showing where the plaintiff's properties are. There's a confusion between, in my judgment, between the earlier statute, which addressed oil rights with respect to the pool of oil as opposed to the unit. The unit is defined by the driller, and the pool is defined by the geological realities, and it seems to me these plaintiffs have quite a bit of property that is implicated clearly by a pool. I don't know by units or not. I think the district court never addressed standing the second time around, and I'm wondering whether the better course on the standing would be to have the district court address that issue first. I think it's not a straightforward issue. Here you have a statute in which they could be a direct target, could be targeting them, and it's a little bit of an unusual statute in view of the fact that it does suggest that certain holders of mineral rights have to follow a supermajority even against their will. I don't know what the answer to that is. That's the due process and taking issues, which is further down the line, but I think the standing could be tied up in that, and what troubles me is we have nothing, no resolution of that on the second complaint. In other words, where all those allegations are made, and I've looked at the maps and tried to figure out. I think it's appropriate to raise standing. As a matter of fact, as you know, we can take it up on our own initiative because it is jurisdictional. I just raise that and wonder what your response is to that. Sure. A few responses, Judge Niemeyer. I think first we wouldn't have any necessarily objection to vacating or demanding for the district court a shot to perhaps further develop this issue. I don't... Just to jump ahead a little, just to give you a little larger perspective of my issue. The substantive ruling on Pullman seemed to rely on the notion that the West Virginia Supreme Court should decide it first, apply in West Virginia, test on the West Virginia law, but the plaintiffs have not alleged any violation of West Virginia law in this complaint. Their complaint is based on the federal constitution, and it looks to me like this may be a misapplication of Pullman substantively. We can get to that argument. I don't want to hear both sides on that. But if we were to send it back on Pullman, the court could then address the jurisdictional issue in the first instance, and you may be right, or maybe you're not. There's a little bit of the scope of the complaint and the focus of the statute. And when you address a statute before it even is enforced or carried out in any sense, and sometimes lawsuits do that, we're looking a little bit at a different standard. We're looking at the injunction standard, whether your plaintiff is subject to immediate harm under the statute, the standard for standing under four injunctions. I understand, Your Honor. And I think also here, you know, from a standing perspective, the plaintiffs bear the burden to demonstrate that, that they satisfy standing. And I don't think they've done so. In particular, setting aside even injury, it's not at all clear that there's the causation, there's the traceability to the acts of the commission. They made all these allegations in the supplemental. You know, they added all these allegations in the complaint, and no one has addressed them yet. You raise it sort of in the abstract. And the questions I keep asking when I look at the issue is, well, what about this? What about this? What about this? And it requires an analysis of the record. Maybe the court has to look at some evidence. I don't know on whether there's standing or not. You know, it's a jurisdictional question. The court gets to make fact-finding if it wants, that type of thing. So how would we handle that in the first instance? Should we be going through and making all those analyses? Well, I don't think you need to unless plaintiffs put forth, being their burden, put forth some reason to think that they have an actual concrete injury, or certainly impending, that is traceable to an act of the commission and can be redressed by judgment. They're not going to have actual injury. They're seeking injunctive relief. So you have to start with that in the beginning. And the question is, are they so immediately a target of that statute? And then you have to look at the reach of the statute and their property interest. And their property interest is present. They have mineral rights, and they have pretty extensive ones around, and they're either close to or part of a unit. They're clearly part of a pool. And the old statute focused on the pool of oil or gas, and the new statute talks about units, which is defined differently. And one supplants the other, and they argue that that in and of itself has denied them some rights. And I think that's where this court can resolve standing on its own, on the point that they've not identified what particular action that the commission is about to take or almost certainly going to take that will adversely affect their interests under the statute. If we look at the statute, the statute provides, as revised by the new law, provides for a very detailed process of how the commission is going to force. But they're arguing, I think they're arguing, the very enforcement of the statute implicates their rights, which had been established under the law before this statute. In other words, they had rights to pools or portions of pools, and the statute defines rights in terms of units, which is laid out by the applicant. Certainly, Your Honor. But it sounds to me like they are trying to enjoin the statute, but it's about enjoining the action of the state actor. They're not talking about whether there's injury. In other words, are they affected? Are they just a bystander watching, or are they somebody directly affected? That's right, Your Honor. We believe they are a bystander. We believe that they think they may be affected. They may be affected. It may constitute a taking. I think they even use that language. It may be, because it's injunctive relief. We're looking forward, so we have to find out how imminent that would be if the statute were enforced. And I think the bottom line is they have not demonstrated the imminent nature of harm to them, and I think that is the crux of the matter for standing, and this Court can resolve it on that ground. So that's it. I would also add, you know, in terms of what this particular – it's important to understand what the Commission can do under the new law, which is they receive applications for a compulsory unitization. There's a hearing. There's a multi-step process. There's appellate rights from that directly up to our intermediate court of appeals. They were very eager to file this lawsuit. They misfired at the outset several times. Has there been any application by anybody with respect to the plaintiff's property? Not that I'm aware of, Your Honor. I mean, they would have to allege that, right? Yes, Your Honor. And they haven't identified any particular proceeding. Of course, this is all public dockets of any application that may affect – even may affect them, and maybe they will, maybe in time. But standings can't be built on maybes, and so I think that's the crux of the problem they have and their eagerness to challenge this law for what good faith – but it's a question of whether they're going to be eminently enforced. What's the response to their argument that the statute, by its very enactment, has deprived them of rights that existed before by overruling their rights as protected with respect to pools? They assert that, but I don't fully – we don't fully understand what they're talking about there. They haven't identified the provisions. What they understand is they had certain property rights that they argue have been diminished. They have not demonstrated a deprivation, in our view, of those property rights to support suing at this time. Again, it may be. That may be true, but it's not true now. Why is it not true now? The statute is enforced, isn't it? The statute is enforced, but the statute in and of itself – The statute supplanted the other interest. There's a deferential in property interests. I understand, Your Honor, but in this proceeding, which is based on Ex Parte Young, it's about seeking injunctive relief from the enforcement of a provision that is, in their view, unconstitutional. And there just hasn't been that enforcement. There isn't that enforcement. They haven't demonstrated imminent enforcement against them. Under their theory, the enactment is what deprived them of the property interest. It converted their property interest into something other than what it was. I don't know if that's in fact so or how that works. It's a complex issue, I think, of mineral rights, oil and gas law type of issues. But they clearly own those types of interests, which have clearly been affected by the statute. I think in terms of the federal courts granting relief, they need to – We're talking about whether they have demonstrated the potential injury necessary for standing. I'm not suggesting they have. What I'm suggesting, it's much more complex than what you're articulating, simply that there's no applications been filed yet. That is another level of standing. I understand. Even setting aside the question of injury, I don't see it being traceable to the commission's action or inaction here. It's not the action, the enactment. It's happened. I understand your position, Your Honor. That's fine. I think that's what they were alleging. Maybe I misunderstood. I don't believe that's sufficient to satisfy standing. Getting back to Judge Niemeyer's original question, should the district court have made a determination with regard to standing or the application of the Pullman Doctrine? In other words, what order should that have preceded? Certainly. Thank you, Your Honor. I certainly think the district court should have addressed the standing first as a question. It's the responsibility of this court to review the standing determinations of the district court on a de novo basis, but we need to have the determinations before we can assess it, correct? It refused to address it, and in our view, the district court lacked jurisdiction to proceed because of a lack of standing. And I believe this court can, on its own, assess standing. It certainly can vacate and remand for the district court to do more. The Cooksey case, this court reviews the district court's determination as a subject matter jurisdiction, including standing determinations de novo. In other words, we look at what the district court did and basically make a determination as to whether that can stand or not. And if we don't have anything in the record to do that, how can we make our own determination? The appellate court doesn't make factual determinations. It reviews the factual determinations of the district court. Certainly, Your Honor. I first would say that I don't believe that there needs to be any factual determinations made by this court or the district court. Frankly, standing can be resolved simply based on the pleadings and the statute and everything that's already in the record. So I don't believe that there would need to be any factual determinations for that purpose. But to the extent the court— and what interest was affected, and that makes a requirement for the court to look at those plots and examine whether they are in the line of fire. From our perspective, Your Honor, these issues were raised. The district court, they had an opportunity to try to respond. The court didn't address it. I understand that the court didn't, but we did. They attempted to. We don't think they met their burden, and we think that's sufficient to say no standing to vacate and remand. We certainly have no objection to vacating the order and remanding for the district court to address standing anew below, unless there are any further questions. Thank you, Your Honors. Thank you, Mr. Ritchie. Mr. Edmond. Good morning, Your Honors. May it please the Court, my name is Anthony Edmond. I'm along with my partner, Michael Baum. We represent the interests of Scott Sonda in this case. I believe we have been talking about standing, and if Your Honors would like, I can begin there, or we can go back to the beginning of talking about jurisdiction of the abstention that was made by the district court. In either respect, I believe the abstention was proper. I don't believe it leaves the defendants in this case effectively out of court. I believe that what happened is exactly as the Supreme Court prescribes needs to happen. Can I ask you a procedural question? So what is the status of your litigation in state court? Have you done what the district court said you should do, go back to state court? We did not, pending the outcome of this appeal, such that if we began proceedings in the state court, this court then rules that what the district court did with the stay is improper. We would then be stuck in state court with a behavior that is antithetical to this court's potential ruling, and so we decided that it would be best to not create a further cloud in this matter, to wait until this court makes its judgment known, and then we can move on from there. Okay, that's fair. So can you add, Judge Niemeyer brought up a point that I hadn't thought about in preparing for this case, and he seems to be suggesting that the very enactment of the statute without any action by the commission or the individual commissioners has caused your client harm. Do you agree with that? I do agree with that. And can you explain why that's the case? Under the old law, mineral owners were entitled to the just and equitable share of the pool. The pool, as I understand it, is when a horizontal is drilled, there's a drainage area, say roughly 300 feet, although it's underground, on either side of the horizontal. That's the pool. The unit is all of the land contained, grouped together, of which there are multiple horizontals that are drilled. So you can have five pools in one unit. And so now instead of getting the just and equitable share of the pool, which is directly from the drainage area of one lateral, there are multiple laterals in a unit that have their own drainage area each. This dilutes the payment process by stating you get your just and equitable share of the unit. So whatever acreage you have of ownership inside that unit, divided by the total acreage of the unit, multiplied by 100, that's your percentage. Whatever the production is, multiply that by your percentage, and that's what your payout is based on. Whereas with the pool, it's specifically with one lateral. If it's taken from under your land, you get what's taken from under your land specifically. It's not diluted by everybody else that's contained within the unit. Okay, but doesn't all of that, you know, what you just described in the calculation, require some affirmative action by the commission to force unitization? No. Are you saying that independent of that, these mineral rights owners now are stuck with this formula, even for unitization that occurred before the enactment of the statute? That's correct, because part of what it did is it took it away from being the just and equitable portion of the pool, which was a mineral right you had and could assert, to now it's the just and equitable portion of the entire unit. Where in the statute does it say that this is retroactive? Well, I believe we addressed in this earlier that we said we couldn't have an ex post facto law, and that was ruled on by the district court that that doesn't apply to civil actions, meaning by implication, even if this is retroactive, it's not a problem. And the fact that it changes. You said even if it is, but is it? I believe that it is, because it changes a right that they had up until I believe June of last year and went into effect. It's now gone, so even if you go back to enforce what it was like before, they can say, well, you're getting your just and equitable portion of the unit. And so the argument about getting your just and equitable portion of the pool is no longer in vogue. Okay, so did you make these arguments to the district court? I believe that we did, Your Honor. Okay, and what did the district court do with that? The district court hasn't ruled specifically on standing on the amended complaint. Their argument was that they addressed standing. Your allegations are in your supplemental allegations in the complaint, which were added to the amended complaint. In the amended complaint, that's right. I'm looking at those now. That's right, Your Honor. But they were never ruled on. They were not ruled on. Aside from the idea that they ruled on standing the first time and dismissed it without prejudice and allowed for an amended complaint, the second time abstained, didn't specifically address it. Our position is if they wanted to dismiss it, they would have because they did that the first time. But in terms of having a hearing on the factual allegations and making a ruling for this court to then read and analyze, that hasn't occurred at this time. Let me ask you about the Pullman doctrine. We didn't have a full discussion with your colleague, but the district court said in the present case, the West Virginia constitutional provision is not as broad and sweeping, but rather is directly germane to the issues presented in this case. And it remanded on that basis, deferred on that basis, which it seems to me is not an application of Pullman. Pullman is where a state decision would further the federal decision under the federal constitution. And as a consequence, the court should address its own jurisdiction. It can't defer jurisdiction in favor of a claim that has not even been asserted. You have not asserted in these two counts a claim that it violated the West Virginia constitution. You said it violated the federal constitution, due process and takings. I believe we did assert in the amended complaint that it violates both the West Virginia constitution and the federal constitution. But the two counts the court was addressing and deferring on were the federal claims. And as a consequence, the decisions by the Virginia Supreme, for a state court under the Virginia constitution is not going to advance this claim. To me, that's just not what Pullman's all about. Pullman's not even close to that. Well, I believe that it states that there is a, by the Supreme Court, there's a preference for state court issues and federal court issues to not be divergent from one another if they're overlapping, and to defer to the state court on the state court issues. Your claim under the federal constitution is not informed by any state decision. There is not an open legal issue under state law that will determine whether there was a takings or a due process violation. And the district court suggested that a ruling under the West Virginia constitution should be made first before you do the federal constitution. And number one, it doesn't make sense. But number two, it is not the Pullman doctrine. The Pullman doctrine is a very narrow exception to the requirement that the district court decide this case. And the exception is created when there is an issue of state law that would advance the federal decision that is before the court. I believe the district court quoted in its order, here the state law problems are delicate ones, the resolution of which is not without substantial difficulty and certainty for a federal court. In such a case, when the state court's interpretation of the statute or evaluation of its validity under the state constitution may obviate any need to consider the validity under the federal constitution, the federal court should hold its hand lest it render a constitutional decision unnecessarily. That is not the Pullman doctrine. It violates the Pullman doctrine and the obligation to decide the case. Basically, that is just a deferral for state court determinations under the West Virginia constitution. But that's not an issue for takings and due process in the federal court. Well, I understand and take Your Honor's point. I would respectfully state that they do overlap, considering that there are... Not an overlap. That's the problem. It's not an overlap. Pullman is an exception for the obligation of the court to decide the case. And the decision before the court on the two counts the court has before it, which is due process under the federal constitution and a takings under the Fifth Amendment, is before the court. And there is nothing, no issue that would be decided and would govern that that the court pointed to. It pointed to a decision under the West Virginia constitution. And that's what it relied on. And it said because the West Virginia constitution is not as broad and sweeping, but rather directly germane to the issues, there should be determination under the West Virginia constitution. But that's not... You raised a federal constitution issue. Well, I... In those two counts. I'm talking about those two counts, the takings and the due process. Okay. Well, if I can refer to the amended complaint, I do believe we brought up... I think you should start and refer to Pullman. Right. I believe what I was referring to was directly quoted regarding Pullman by the district court. Yes, what you quoted didn't help. In other words, what you quoted is not an application of the Pullman standard. Pullman is a remote, narrow exception, not favored by the courts. It's there in order to have an issue which would be binding on the federal court and help it dispose of the takings and the due process issue. But the court took it right out from under that by saying a ruling under the West Virginia Supreme Court, which has not been made on those two counts, would assist. And not only it would not assist, the court said it would be distinguishable because the West Virginia constitutional provision is distinct from the federal constitution. This is a federal constitutional issue. Two issues, right? Yes. Okay. Right. And in city of Meridian, which was quoting Pullman, as pointed out by the district court, proper exercise of federal jurisdiction requires that controversies involving untitled questions of state law be decided in the state tribunals. This is federal law. Preliminary to a federal court's decision. Whether there is a takings is federal law. But it says prior to the federal court's consideration of underlying federal constitutional issues. And if it's, as Your Honor stated, two federal constitutional issues that are underlying, then the state tribunal has to first make its decision  I thought your issue was that nobody's raised a question about the interpretation of the statute in this case. And I thought your issue was it's pretty clear they're going to take your property against your will. They're going to take a portion of your mineral interests without your consent. Isn't that your argument? Yes, sir. All right. And you say that's clear in the statute, right? Yes. All right. You don't need a state ruling on that. And that's not what he's sending it back for. Okay. Well, I respectfully, Your Honor, I agree with that summarization of the matter. I thought you might. But you're pushing back on the Pullman notion. Well, I simply wanted to. I didn't want to misrepresent what the district court said. Well, I just quoted to you for the district court. The district court was sort of basically deferring to state courts on an issue that is presented to the federal court under federal law. Okay. Point well taken, Your Honor. Again, I don't disagree with it. I wanted on the record that I wanted to make sure I was not misrepresenting what the district court said in having this discussion. So, again, Your Honor, I agree with your point. And as to, I believe we talked, there was extensive discussion about standing. I think perspective relief, the ability to seek perspective relief gives our client standing, which is exactly what we were seeking when this was first filed. And there are other matters of standing that also apply. The taking of their mineral interest without just compensation. Well, it does, but only if, in fact, I mean, it depends on the likelihood of the statute being enforced. And as I understood this statute, you have a different view of it, and maybe it needs to go back to the district court. And Judge Niemeyer has summarized a different view of it. The statute, by its very enactment, apparently, you allege, has deprived your clients of rights that existed before the enactment of the statute. Is that right? Yes, sir. Okay. Well, that's, I suppose that is sufficient to allege standing. If, in fact, that turns out to be the case. My understanding of the case was that it was a prospective application of the statute to force unitization that would cause the injury in question. But you say it's more than that. It is more than that. It's that as well, but in addition to that, it's taken away the rights with the definitions of just and equitable pool versus just and equitable portion of the unit, plus the application of it later then further deprives it. And it was our position that the way this new statute is written compared to the old one, the old one, the Oil and Gas Conservation Commission had the ability to make its own determinations and judgments based upon a list of factors, at least at the time, which was the Deepwell Commission, which includes Utica, which is Utica and Marcellus are the two most lucrative in our region. Marcellus is not Deepwell. Utica is. But a series of factors that they can analyze based on factual basis during a hearing and make a determination. The new statute requires that if all of the boxes are checked, they simply have to, they shall approve it. Do you agree or disagree with your opponent colleague that the standing determination should be made before any inquiry with regard to the application of the Pullman Doctrine should be considered? I do not disagree with that. Okay, and where in the record do you believe the district court made any standing determinations for this court to review de novo? Based on implication alone, the original complaint was dismissed based on a lack of standing. The amended complaint, although it doesn't address it specifically, did not dismiss based on standing as it had on the original complaint. And if it wanted to do that again, I suspect that it would have. Again, that's why I say it's by implication only. It has not made any specific reference to whether my clients have standing in this matter or not. But I believe that if they hadn't, excuse me, didn't have standing and district court made that determination, they would have simply dismissed the case whole cloth, as they did the first time, without prejudice, allowing for the amended complaint to be filed. So further to that issue, I also believe that, as I mentioned before, there are multiple ways in which standing can be ascertained. But I also want to go back and say that this case is not an anti-force pooling case. Our clients don't think, as was characterized by our opponent, that force pooling itself is unconstitutional. It's the manner in which it happens that results in the unlawful taking without just compensation, without due process of law. But I simply wanted to clear that up on the record so that it's known that my clients are not against force pooling in and of itself in the abstract. It's about the specific portions of this that, as we mentioned earlier, limit their rights that they are contesting. So anything further... You defined the word pool earlier on, and I had thought it meant something else. I thought the pool is the mineral, the natural geographical location of, say, oil or gas as it actually exists in the layers of rock. A pool is wherever that extends, and that usually goes across boundary lines. And so the oil and gas law has always had the difficulty... You can be at one end of the pool and suck out all the oil and gas, which takes it away from everybody else. And so you have to have some mechanism by which you determine that you're doing that and compensate the person who has it. But I thought the pool was a geological term, whereas a unit is a term defined by the applicant. Yeah, I believe that's correct. And that the drainage area that I spoke about, that is what you're referring to about where the pool extends. That's the drainage area. I use different verbiage. Okay, thank you. I thought you... Yeah, no, I simply use different verbiage, but it's the same definition. And I apologize for the confusion that may have caused. But in essence, again, not against forced pooling, against these specific provisions. It's these specific provisions that we've challenged that have taken away rights, hence our perspective, seeking injunctive relief on it. And the application thereafter will also provide standing because then the Oil and Gas Commission has to have a rubber stamp. There's no recourse. And we've stated... Has there been any applicant submitted an application under the new statute since it was enacted? There have been applications, whether they've applied to my client's particular interest. I'm just talking about generally. Generally, there have been, yes. And how many have been made, roughly? I don't know how many there have been made, roughly. I'm aware of specifically at least one. That's why I know for certain that they have been made. What has happened at those hearings specifically and any challenges that have been made or not have been made, if there was any objection, I'm not certain about the outcome of that either. I know that there have been suggested changes in the units for my client's interest. I believe that's still pending. As of right now, it hasn't been in front of the Oil and Gas Conservation Commission. And I'll be following that closely to see how that outcome... what the outcome of that is. Are your clients implicated by that application, as far as you can tell? Specifically, I'm not sure I believe that it would be. They receive notices that they're going to change the units. That's where that comes from, Your Honor, as I'm out of time. Do your clients receive that notice? Yes, sir. Thank you, Mr. Edmund. Thank you, Your Honors. A few quick points on rebuttal. Appellees have still not identified what act or omission of the commissioners have caused their alleged injury, which, of course, is necessary to invoke the federal judicial power. The mere existence of the statute, absent some actual or certainly impending enforcement of it, is not sufficient to satisfy standing. Statutes don't cause actual or future injury to enforcement. What if a statute was enacted that says all the land in City Jonesville, all the land in Jonesville, is now converted to life estates with the interest, the remainder, going to the city? And that was the statute. Would a landowner in Jonesville have standing to challenge that? It would depend on the enforcement. Who enforces this? No, no enforcement. The statute says, here and after, all landowners' land is a life estate with the remainder to the city. Not in federal court unless they can identify under Ex parte Young. That's pretty peculiar because at that point, that property interest has been taken with the enactment. They converted a fee simple into a life estate. And you don't need to sell it or have somebody take it, physically buy it. They declared it and changed the property interest, didn't they? Am I hypothetical? Yes, yes, I agree with that. But we need more to invoke the federal judicial power here. And under Ex parte Young, you need to... I'd like to see that. I can't think of anything more direct taking than saying, I am converting your property into a life estate with the remainder going to the city. It seems to me they have taken part of your fee simple. And it may well be that those individuals would absolutely have a taking clause claim in state court. In West Virginia, in West Virginia permits under the 11th Amendment, if there's recourse in state court, they have to go to state court for taking a claim. It doesn't matter whether it's state court or federal court. The question is whether they're standing, whether that property owner was injured. I think there's injury, yes. It sounds like injury, but I'm going further as to traceability. Here, what we're lacking is... Forget here. Just stick with my hypothetical for a moment. So I understand what you're pushing back on. But you agree that enacting a statute that changes a property interest from fee simple to a life estate involves injury. Yes, sir. I do agree with that. In our view, they have not met their burden to satisfy the elements of standing. It's not for defendants to... I'm looking at all their paragraphs here. Pages 37, 38, 39 of the JA, and that looks to me what they're alleging. But I may be reading it wrong. I understand, Your Honor. Ultimately, we believe the court should vacate and remand, whether with instructions to dismiss for lack of standing or alternatively to address standing in the first sentence by the district court. Unless there are any further questions. Thank you, Mr. Ritchie. Thank you. Thank you both for your arguments this morning. We'll come down and greet counsel and move on to our second case. Your Honor, good morning. Nice to meet you.
judges: Albert Diaz, Paul V. Niemeyer, Rossie David Alston Jr.